O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| OFELIA RAMIREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>LQ MANAGEMENT, L.L.C. dba LA QUINTA INN & SUITES, et al.,<br><br>    Defendants. | Case № 2:19-CV-06507-ODW (JPRx)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION [17]** |

## I.    INTRODUCTION

Before the Court is Defendant LQ Management, L.L.C.'s ("LQ") Motion to Compel Arbitration ("Motion"). (ECF No. 17.)  For the reasons that follow, the Court **GRANTS** LQ's Motion.[1]

## II.    FACTUAL BACKGROUND

LQ is a Delaware limited liability company doing business as La Quinta Inn and Suites.  (Notice of Removal Ex. A ("Compl.") ¶¶ 1, 2, ECF No. 1-1.)  LQ employed Plaintiff Ofelia Ramirez for thirty-nine years. (Compl. ¶ 8.)  Ramirez held various positions throughout her employment and at the time of her termination on

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

July 25, 2017, was the Housekeeping Manager/Executive Housekeeper for the La Quinta Inn & Suites at LAX. (Compl. ¶ 8; Suppl. Decl. of Monica Melancon ¶ 4 ("Melancon Decl. II"), ECF No. 21.)

As part of her employment, on January 20, 2016, Ramirez signed LQ's "Arbitration Agreement Acknowledgment" ("Acknowledgment"). (Mot. 1; Decl. of Monica Melancon ("Melancon Decl.") ¶ 4, Ex. A. ("Acknowledgment"), ECF Nos. 17-1, 17-2.) The Acknowledgment states that Ramirez understands and agrees to the terms of LQ's "Arbitration Statement and Agreement for California Employees" ("Agreement"), which provides:

> [The Employee] and the Company [LQ] agree that any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between the Employee and the Company . . . arising from, related to, or having any relationship or connection whatsoever with the Employee's seeking employment with, employment by, or other association with, the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act.

(Melancon Decl. Ex. B ("Agreement") 1, ECF No. 17-2.) The Agreement appears on page one of two, with the Acknowledgment to be signed at page two. (Agreement.)[2]

On October 24, 2016, Ramirez suffered a work-related injury to her knee. (Compl. ¶¶ 9–11.) By March 2017, Ramirez returned to work with no work restrictions, but continued to experience pain. (Compl. ¶¶ 11–13.) Although Ramirez complained to LQ, it did not provide any accommodations after March 2017 and, on July 25, 2017, LQ terminated Ramirez's employment. (Compl. ¶¶ 12–13.)

Based on her injury and LQ's handling of the matter, Ramirez initiated this action against LQ. (*See generally* Compl.) Ramirez alleges five causes of action:

---

[2] Ramirez contends that she received and signed only the Acknowledgment. (Opp'n to Mot. ("Opp'n") 6, ECF No. 18.)

(1) Disability Discrimination; (2) Failure to Provide Reasonable Accommodations; (3) Failure to Engage in Good Faith Interactive Process; (4) Retaliation; and (5) Wrongful Termination. (Compl. ¶¶ 17–60.) LQ contends that Ramirez's causes of action are based on her employment with LQ and subject to arbitration under the Agreement. (Mot. 2.) Ramirez refuses to stipulate to arbitration, so LQ moves the Court to compel arbitration. (Mot. 1, 3.)

### III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs contract disputes relating to arbitration where they affect interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). The FAA establishes "a liberal federal policy favoring arbitration agreements" and requires district courts to compel arbitration on all claims within the scope of the agreement. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hos. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In deciding whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). However, in light of the FAA's "savings clause," every arbitration agreement is subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

### IV.   DISCUSSION

LQ moves to compel arbitration on the ground that Ramirez's causes of action are subject to arbitration because they arise from her employment and thus fall within the scope of the valid and enforceable Agreement. (*See* Mot.) Ramirez contends LQ

fails to establish the existence of a valid arbitration agreement and that, regardless, the Agreement is unconscionable and unenforceable. (*See generally* Opp'n.)[3]

**A.     Existence of a Valid Arbitration Agreement & Scope**

The Court first addresses the "gateway" issues: whether a valid arbitration agreement exists and whether it covers the present dispute.

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In California "[a]n essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001), *as modified* (Sept. 12, 2001). "[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 842 (2014).

First, Ramirez's arguments regarding validity turn on assent. LQ argues that Ramirez expressly agreed to arbitrate claims arising from her employment with LQ because she signed the Agreement "acknowledging she had read and understood its terms, including the requirement that she submit all employment-related disputes to arbitration." (Mot. 7.) LQ submits the Agreement along with Ramirez's signed Acknowledgment. (*See* Agreement and Acknowledgement.) Ramirez argues that LQ fails to demonstrate the existence of a valid agreement because (1) the Agreement was not incorporated by reference into the Acknowledgment and LQ did not provide Ramirez with the full Agreement, and (2) the Acknowledgment does not contain

---

[3] Ramirez asserts as part of her unconscionability argument that the FAA does not govern. (*See* Opp'n 15.) However, the Agreement expressly invokes the FAA. (Agreement 1.) Further, "the FAA applies to employment contracts if the employment affects interstate commerce." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1100 (C.D. Cal. 2015) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)). Ramirez's employment with LQ affected interstate commerce because she was employed in housekeeping at the La Quinta Inn and Suites at LAX and the operation of even local hotels involves interstate commerce. *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258 (1964). Thus, based on the Agreement's express invocation of the FAA and the nature of Ramirez's employment, the Court finds the FAA applies.

material terms governing arbitration and is therefore unenforceable as an arbitration agreement on its own. (Opp'n 8, 11). The Court finds the Agreement was incorporated by reference into the Acknowledgment, and thus does not reach Ramirez's second argument.

"For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997) ("[T]he reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.") The Acknowledgment Ramirez signed is entitled "Arbitration Agreement Acknowledgment" and explicitly states "I acknowledge that I have received, read, and understand LQ Management L.L.C.'s Arbitration Statement and Agreement for California Employees and its contents. I agree to abide by the requirements therein." (Acknowledgement.) The Acknowledgment clearly and unequivocally references and guides the reader to the Agreement. Accordingly, the Court finds the Agreement was incorporated into the signed Acknowledgment. *See id.*

Second, Ramirez does not challenge that the Agreement covers the present dispute. (*See* Opp'n.) The plain language of the Agreement requires arbitration of any claims arising from Ramirez's employment with LQ. (*See* Agreement 1.) As Ramirez's claims here arise from LQ's alleged retaliatory and discriminatory conduct during Ramirez's post-injury employment with LQ, they fall within the scope of the Agreement and are subject to arbitration. (*See* Compl. ¶¶ 7–14.)

Both threshold questions under the FAA are answered in the affirmative. Accordingly, the Court must enforce the Agreement according to its terms unless a generally applicable contract defense applies.

**B.   Unconscionability**

Ramirez argues that the Agreement is unenforceable because it is both procedurally and substantively unconscionable. (Opp'n 8–15.)

Unconscionability has both a procedural and substantive component. *Armendariz v. Found. Health Psychcare Servs, Inc.*, 24 Cal. 4th 83, 114 (2000). Although both are required, they need not be present in the same degree. *Id.* A sliding scale applies whereby the more substantive unconscionability present, the less procedural unconscionability necessary for the contract term to be unenforceable, and vice versa. *Id.* Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US)*, 55 Cal.4th 223, 236 (2012)).

Although the Court finds procedural unconscionability present, Ramirez fails to establish substantive unconscionability. As both are required, the Court finds the Agreement is not unconscionable.

### 1. Procedural Unconscionability

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Id.* The threshold inquiry for procedural unconscionability is "whether the arbitration agreement is adhesive." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 113). A contract of adhesion is a standardized contract, imposed on the party to sign without the opportunity for negotiation. *Id.* (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Here, it is undisputed that the Agreement is adhesive and lacks an opt-out clause. (Opp'n 1–2, 10; Reply in Supp. of Mot. ("Reply") 10, ECF No. 19.) However, "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261–62 (requiring "other indications of oppression or surprise" to find a high level of procedural unconscionability).

Ramirez argues the degree of procedural unconscionability here is "severe" because (1) the Agreement was not incorporated or attached to the Acknowledgment and (2) LQ did not provide a Spanish translation. (Opp'n 11–12.) The Court rejects

6

1  Ramirez's first argument because, as discussed above, it finds the Agreement
2  incorporated by reference. However, although "incorporation by reference, without
3  more, does not affect the finding of procedural unconscionability," *Poublon*, 846 F.3d
4  at 1262, Ramirez argues that, when combined with the failure to provide a Spanish
5  translation, the circumstances amount to severe procedural unconscionability. (*See*
6  Opp'n 11–12.)
7        Regarding the need for a Spanish translation, the parties dispute Ramirez's level
8  of English proficiency. Ramirez contends she is a Spanish speaker with limited
9  English ability, while LQ asserts that Ramirez is bilingual in English and Spanish, as
10 required for her management position. (*See* Ramirez Decl. ¶ 4; Melancon Decl. II
11 ¶ 4.) Further, LQ insists that when the arbitration agreement was rolled out, it was
12 provided to each employee and translated when needed. (Melancon Decl. II ¶ 5.) In
13 contrast, Ramirez contends she was given only an English version of the
14 Acknowledgement and it was not explained. (Ramirez Decl. ¶ 14.) These competing
15 declarations are a wash. Ramirez bears the burden to establish unconscionability yet
16 provides no evidence beyond her own declaration to establish that she was denied a
17 translation of the Agreement.
18       Ultimately, the Court need not resolve the conflict. Regardless of the degree of
19 procedural unconscionability, some substantive unconscionability is necessary to find
20 the Agreement unconscionable, and the Court finds none here. *See Armendariz*, 24
21 Cal. 4th at 114.
22       2.    *Substantive Unconscionability*
23       Substantive unconscionability is found when the contract is overly harsh or
24 one-sided such that "it requires one contracting party, but not the other, to arbitrate all
25 claims arising out of the same transaction or occurrence." *Id.* at 120. The "paramount
26 consideration" is mutuality of the obligation to arbitrate. *Nyulassy v. Lockheed Martin*
27 *Corp.*, 120 Cal. App. 4th 1267, 1287 (2004) (citation omitted). At least a "modicum
28

of bilaterality" is required to prevent substantive unconscionability in an arbitration agreement. *Armendariz*, 24 Cal. 4th at 117.

The Agreement provides that both parties must submit their respective claims to arbitration. (Agreement 1.) Thus, it is not unfairly one-sided. Ramirez contends that the Agreement is nevertheless substantively unconscionable because it (1) fails to provide minimum discovery as required under *Armendariz*; (2) fails to provide a neutral arbitrator; and (3) improperly waives the right to bring a class action lawsuit. (Opp'n 2.) The Court considers each argument in turn.

a. <u>Minimum Discovery</u>

First, Ramirez contends that the Agreement is silent on discovery and does not identify a standard that governs, and thus fails to provide the minimum discovery required by *Armendariz*. (Opp'n 12–13.) Ramirez also argues that she will be severely prejudiced by limited discovery in arbitration. (Opp'n 12.) LQ concedes that the Agreement does not explicitly mention discovery but asserts this means it also "contains no limitations on discovery." (Mot. 9.) LQ argues that the Agreement provides more than adequate discovery because it "adopts the procedures of the California Arbitration Act . . . which provides that all parties 'shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration.'" (Reply 12.)

In *Armendariz*, the California Supreme Court found the discovery provisions set forth in the California Arbitration Act ("CAA") at Code of Civil Procedure section 1283.05, subdivision (a) to be adequate. 24 Cal. 4th at 105–06 ("[P]arties incorporating the CAA into their arbitration agreement are also permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05."). Here, the Agreement expressly incorporates the procedures of the CAA, "including section 1283.05 and all of the act's other mandatory and permissive rights to discovery." (Agreement 1.) Pursuant to *Armendariz*, this provides adequate discovery.

### b. Neutral Arbitrator

Next, although the Agreement gives Ramirez the right to strike *up to seven* proposed arbitrators, she argues that LQ "is a repeat player with JAMS," which means she will not be able to strike all biased arbitrators who seek to further business with LQ. (Opp'n 12–13.) Based on this reasoning, Ramirez asserts that the Agreement's arbitrator selection process fails to provide a neutral arbitrator. (Opp'n 14.)

Ramirez cites *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 248 (2014), to support the assertion "that an arbitrator [at JAMS] may have self-interest in deciding for [LQ]" as a repeat player. (Opp'n 13.) Ramirez mischaracterizes *Tiri*. To begin, the court in *Tiri* was specifically referring to delegation clauses and the determination of whether a dispute is arbitrable. But even extending the discussion in *Tiri* to other decisions an arbitrator may make, *Tiri* does not support Ramirez. Quite the contrary: the court in *Tiri* emphasized that "these concerns" regarding repeat players in arbitration "are virtually *always* present with delegation clauses in employment arbitration agreements. To conclude that they signify substantive unconscionability would be tantamount to concluding that delegation clauses in employment arbitration agreements are categorically unenforceable." *Tiri*, 226 Cal. App. 4th at 249. The Court agrees. Mere speculation that arbitrators at JAMS will favor LQ solely on the basis of repeat business does not amount to substantive unconscionability. Further, Ramirez is afforded seven strikes in the arbitrator selection process, which mitigates any potential bias. Accordingly, the Court does not find the selection of JAMS to preclude election of a neutral arbitrator or to be substantively unconscionable.

### c. Waiver of Class Action

Finally, Ramirez argues that the FAA does not govern the Agreement, but rather the CAA applies, and that under the CAA the Agreement "improperly includes a class action waiver." (Opp'n 15.) The Court need not engage in an extensive analysis here as it has already determined that the FAA applies, and the FAA permits

class action waivers.  See *Epic Sys. Corp.*, 138 S. Ct. at 1619; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Concepcion*, 563 U.S. at 344.

The analysis of Ramirez's arguments leads the Court to conclude that the Agreement is not substantively unconscionable.  Therefore, although there is some procedural unconscionability, without a showing of substantive unconscionability, the Court does not find the Agreement unconscionable.  Accordingly, the Court **GRANTS** the Motion and orders the parties to comply with the Agreement's terms.

### C. Stay or Dismiss

In the Ninth Circuit, the district court has discretion to dismiss a party's complaint where the court finds that the arbitration clause covers all of the party's claims.  *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (affirming dismissal of action without prejudice where "all of the claims raised in the action are subject to arbitration"); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  As all of Ramirez's claims are subject to arbitration, the Court in its discretion **DISMISSES** this action without prejudice.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** LQ's Motion to Compel Arbitration and **DISMISSES** this action. (ECF No. 17.)  The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

May 29, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**